# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| WILLIAM HARRIS, ) | |
| ) | Civil Action No. 15 – 39J |
| Plaintiff, ) | |
| ) | |
| v. ) | Magistrate Judge Lisa Pupo Lenihan |
| ) | |
| BRIAN HYDE, *Health Care* ) | |
| *Administrator*, TREVOR WINGARD, ) | ECF No. 72 |
| *Superintendent*, HEIDI SROKA, ) | |
| *Superintendent's Assistant*, JOSEPH ) | |
| MAZURKIEWICZ, *Deputy* ) | |
| *Superintendent*, HARR, *Lieutenant*, ) | |
| ROBERT D. KINZEY, JR., ) | |
| *Lieutenant*, ) | |
| ) | |
| Defendants. | |

## MEMORANDUM OPINION

Pending before the Court is a Motion for Summary Judgment that was filed by the Defendants on August 2, 2016. (ECF No. 72.) For the following reasons, the Motion will be granted with respect to all claims raised. However, Plaintiff's retaliation claim remains pending and the Court will reserve ruling on that claim until additional briefing is provided.

## I.     Factual Background

Plaintiff was transferred to the Restricted Housing Unit ("RHU") at SCI-Somerset on November 20, 2014, and, per DOC policy,[1] his knee braces were confiscated by the Lieutenant on that day. (ECF No. 75; Defs.' Ex. 2, at ¶¶ 5-6; Ex. 4, at ¶¶ 8-10; Ex. 6.) Defendants claim that Plaintiff's 180 day medical pass for his knee braces had expired and that he was instructed on the proper procedures in order to obtain his knee braces, including signing up for sick call in

---

[1] According to the Defendants, it is policy that any time an inmate goes into the RHU, all property is confiscated, including medical devices such as knee braces.

1

order to get the situation resolved. (ECF No. 75; Ex. 2, at ¶¶ 12-14; Exs. 5 & 6.) Plaintiff states that there was no need to sign up for sick call because his knee braces were "permanent" and he was told that he would receive them back when medical cleared them. (ECF No. 3, at p.4.) Plaintiff's knee braces were ultimately returned to him on December 28, 2014. (ECF No. 75; Ex. 2, at ¶ 14, Ex. 3, at ¶ 12, Ex. 5.)

Plaintiff claims that without his knee braces, he could not have his blood pressure monitored, and that he has hypertension, which is a serious medical condition that could lead to stroke if not properly monitored. (ECF No. 3-1, at p.4.) Specifically, Plaintiff states that his knee braces were needed to facilitate his having to stoop and squat to place his arm thru a cell door aperture. (ECF No. 3-1, at p.4.)

Before he received his knee braces back on December 28, 2014, Plaintiff sent an inmate request to Superintendent Wingard on November 28, 2014, asking for the return of his knee braces and informing him that it was too painful for him to flex/bend without them. (ECF No. 3-1, at p.4.) Wingard informed Plaintiff that his request would be forwarded to CHCA Hyde for review. Id. On that same day, Plaintiff filed a grievance (Grievance No. 538871) complaining that he had been wrongfully denied his knee braces and seeking their return. (ECF No. 3-1, at p.6.) Plaintiff said that he had spoken with every nurse and Lt. Shaffer who told him they would be returned to him once cleared by medical. (ECF No. 3-1, at p.7.) Officer Robert D. Kinzey, Jr. was assigned to investigate Plaintiff's grievance, and on December 17, 2014 he allegedly spoke with Plaintiff by intercom and informed him that his knee braces were going to be returned to him. (ECF No. 3, at pp.4-5.) According to Plaintiff, Kinzey asked him to "sign off" on the grievance to get his knee sleeves back, but Plaintiff refused. (ECF No. 3, at p.5.) Later that evening, Plaintiff asked Lt. Harr about the status of his knee braces and Lt. Harr allegedly

responded, "I could drag my feet on gettin' them to you if you keep playing games and don't sign off on [the grievance]. It works both ways." (ECF No. 3, at p.5.) Plaintiff claimed that it was extortion and responded by filing another grievance (Grievance No. 543368). (ECF No. 3-1, at p.11.) That grievance was upheld in part because per policy it is not required for an inmate to willingly sign off on a grievance, but it was denied in part based on the accusation of staff retaliation. (ECF No. 3-1, at p.12.) Both Kinzey and Harr deny ever telling Plaintiff that in order to receive his knee braces, he would need to withdraw his grievance. (Defs.'s Ex. 3, at ¶¶ 4-6; Ex. 4, at ¶¶ 4-7.)

In response to his first grievance that was filed on December 17, 2014, Kinzey contacted the medical department and was informed that Plaintiff was being monitored and was in no immediate danger of a serious health risk. (ECF No. 3-1, at p.7.) However, the officer was also informed that Plaintiff was prescribed the knee braces in question and that they would be returned to him once it was determined that they posed no risk to security. Id. The officer then noted that the knee braces were returned to Plaintiff on December 28, 2014. Id.

## II. Standard of Review

Summary judgment is appropriate if, drawing all inferences in favor of the nonmoving party, "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Summary judgment may be granted against a party who fails to adduce facts sufficient to establish the existence of any element essential to that party's case, and for which that party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

The moving party bears the initial burden of identifying evidence, or the lack thereof, which demonstrates the absence of a genuine issue of material fact. Nat'l State Bank v. Fed.l

Reserve Bank of New York, 979 F.2d 1579, 1581-82 (3d Cir. 1992) (citing Celotex, 477 U.S. at 323-25). Once that burden has been met, the nonmoving party may not rest on the allegations in the complaint, but must "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex, 477 U.S. at 324 (quoting FED. R. CIV. P. 56(e) (1963). *See also* Orsatti v. New Jersey State Police, 71 F.3d 480, 484 (3d Cir. 1995) ("plaintiff cannot resist a properly supported motion for summary judgment merely by restating the allegations of his complaint, but must point to concrete evidence in the record that supports each and every essential element of his case.") (citing Celotex, *supra*).

An issue is genuine only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Finally, while any evidence used to support a motion for summary judgment must be admissible, it is not necessary for it to be in admissible form. *See* FED. R. CIV. P. 56(c)(2); Celotex, 477 U.S. at 324; J.F. Feeser, Inc., v. Serv-A-Portion, Inc., 909 F.2d 1524, 1542 (3d Cir. 1990).

**III. Discussion**

**A. Claims against Defendants Kinzey, Harr, Hyde and Mazurkiewicz**

**1. Retaliation**

While Plaintiff does not specifically raise a retaliation claim, a liberal reading of his Complaint suggests that such a claim is presented by the facts. Therefore, according Plaintiff substantial deference and liberality, as the Court is required to do because Plaintiff is proceeding *pro se*, Haines v. Kerner, 404 U.S. 519, 520 (1972), the Court will assume that Plaintiff intended to raise a retaliation claim. Specifically, that Defendants Kinzey and Harr retaliated against him by not returning his knee braces for his refusal to sign off on his grievance.

In his Complaint, Plaintiff states that he was told by Kinzey on December 17, 2014, that the issue with his knee braces had been resolved and that in order to receive them, he would need to withdraw his grievance. However, because inmates are not required to withdraw their grievances per DOC policy, Plaintiff refused. Later that evening, Plaintiff allegedly inquired about the status of his knee braces to Harr, who, according to Plaintiff, said, "I could drag my feet on gettin' them to you if you keep playing games and don't sign off on [the grievance]. It works both ways." While Harr disputes ever making this statement, Plaintiff's knee braces were not returned to him until December 28, 2014, eleven days after he was allegedly told by Kinzey that the issue had been resolved. There appears to be no explanation in the record for the eleven day delay in returning Plaintiff's knee braces.

Although the deadline has passed, the Court will allow the Defendants thirty days to file an additional Motion for Summary Judgment briefing this one claim, and Plaintiff will be allowed thirty days in which to respond to it. Accordingly, the Court will reserve ruling on this claim until such additional briefing has been provided.

**2. Conspiracy**

Plaintiff alleges that Defendants Kinzey and Harr entered into a conspiracy to deny him his knee braces. This Court has explained that,

> [i]n order to make out a claim for conspiracy pursuant to 42 U.S.C. § 1983, a plaintiff must allege conspiracy with particularity even though a heightened pleading standard generally does not apply to civil rights actions against individual defendants, Bieros v. Nicola, 860 F.Supp. 223, 225 (E.D. Pa. 1994) (citing Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 168, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993)). "To plead conspiracy adequately, a plaintiff must set forth allegations that address the period of the conspiracy, the object of the conspiracy, and the certain actions of the alleged conspirators taken to achieve that purpose." See, e.g., Shearin v. E.F. Hutton Group, Inc., 885 F.2d 1162, 1166 (3d Cir. 1989), *abrogated on other grounds by* Beck v. Prupis, 529 U.S. 494, 120 S.Ct. 1608, 146 L.Ed.2d 561 (2000). Further, in light of Twombly and its progeny, there must be "'enough

factual matter (taken as true) to suggest that an agreement was made,' in other words, 'plausible grounds to infer an agreement.'" Great Western Mining & Mineral Co., 615 F.3d 159, 178 (3d Cir. 2010) (quoting Twombly, 550 U.S. at 556).

Smith v. Ketchum, No. 13-700, 2014 WL 4060565, at *6 (W.D. Pa. Aug. 15, 2014). "As a threshold matter, however, a § 1983 conspiracy claim only arises when there has been an actual deprivation of a right." Perano v. Twp. of Tilden, 423 F. App'x 234, 239 (3d Cir. 2011).

Here, Plaintiff asserts that after inquiring about the status of his knee braces, which were returned to him on December 28, 2014, Kinzey indicated to Plaintiff that in order to receive his knee braces, Plaintiff would have to withdraw his grievance. Soon thereafter, Harr allegedly said, "I could drag my feet on gettin' them to you if you keep playing games and don't sign off on [the grievance]. It works both ways." Plaintiff asserts that the statements made by Harr "are evidence of a conspiracy with Lt. Kinzey to deprive [him] of [his knee braces]." However, the Court finds that this statement alone does not support an existence of a conspiracy between Kinzey and Harr.

These statements allegedly made by Kinzey and Harr do not evidence a meeting of the minds or an agreement reached to purposely deprive Plaintiff of his knee braces, especially since it was common practice to have inmates sign-off on grievances rather than wait however long for the matter to be resolved on paper. See ECF No. 3-1, at p.12. Moreover, for the reasons discussed in the next section, there was no underlying constitutional violation which is required for a conspiracy claim. Accordingly, summary judgment will be granted on this claim.

### 3. Eighth Amendment

Plaintiff next claims that Defendants Kinzey, Harr, and Hyde violated his Eighth Amendment rights under the United States Constitution by not returning his knee braces, which caused him undue pain and suffering and put him at risk of suffering a stroke or a heart attack

due to the fact that he could not bend to stick his arm out of the aperture to have his blood pressure monitored. As to Kinzey and Harr, Plaintiff alleges that they intentionally denied him his knee braces for his refusal to sign on his grievance, and therefore they were deliberately indifferent to his hypertension, a serious medical need, and the risk that he could have a heart attack or stroke if his blood pressure is not properly monitored. As to Hyde specifically, the CHCA, Plaintiff claims that Hyde knew he needed his knee braces in order to effectuate blood pressure monitoring and all he had to do was tell RHU staff that he was properly and permanently prescribed the braces for his chronic condition. As such, he claims that Hyde knew of and disregarded an excessive risk to his health and safety.

The Eighth Amendment protects individuals against the infliction of "cruel and unusual punishments." U.S. CONST. amend. VIII. This protection, enforced against the states through the Fourteenth Amendment, guarantees incarcerated persons humane conditions of confinement. In this regard, prison officials must ensure that inmates receive adequate food, clothing, shelter and medical care, and must "take reasonable measures to guarantee the safety of the inmates." Farmer v. Brennan, 511 U.S. 825, 832 (1994) (quoting Hudson v. Palmer, 468 U.S. 517, 526-27 (1984)).

In the context of medical treatment, an inmate must prove two elements: (1) that he was suffering from a "serious medical need," and (2) that prison officials were deliberately indifferent to the serious medical need. Estelle v. Gamble, 429 U.S. 97, 106 (1976).

The first showing requires the court to objectively determine whether the medical need was "sufficiently serious". A medical need is "serious" if it is one that has been diagnosed by a physician as mandating treatment, or one that is so obvious that even a lay person would easily

7

recognize the necessity for a doctor's attention. Monmouth County Correctional Institutional Inmates v. Lanzara, 834 F.2d 326, 347 (3d Cir. 1987), cert. denied, 486 U.S. 1006 (1988).

The second prong requires a court subjectively to determine whether the officials acted with a sufficiently culpable state of mind. Deliberate indifference may be manifested by an intentional refusal to provide care, delayed medical treatment for non-medical reasons, a denial of prescribed medical treatment, or a denial of reasonable requests for treatment that results in suffering or risk of injury. Durmer v. O'Carroll, 991 F.2d 64, 68 (3d Cir. 1993).

Here, the record belies any allegation of deliberate indifference on the part of the Defendants, at least from the date Plaintiff's knee braces were initially confiscated during his processing into the RHU on November 20, 2014, as per policy, until the day it was supposedly discovered that Plaintiff in fact had a permanent knee pass. During this period of time, it was believed that Plaintiff had an expired 180 day pass, and an attempt was made to address the problem. (ECF No. 75; Ex. 2, at ¶¶ 7-8.) Plaintiff was directed by Defendant Hyde to sign up for sick call, and was even offered it free of charge. Id. at ¶ 12; *see also* ECF No. 25-1, at p.12. The Defendants contend that had Plaintiff done as he was directed, it would have resulted in the return of his knee braces. Id. Ultimately, however, the issue was investigated, due to Plaintiff's filing of a grievance, and it was determined that Plaintiff did have a permanent prescription for his knee sleeves. (ECF No. 3-1, at p.7.) The record is unclear when this occurred, but Plaintiff maintains that the issue was resolved on December 17, 2014. Therefore, prior to this date, the record is clear that the confiscation of Plaintiff's knee sleeves at the time he was processed into the RHU was simply per policy and the withholding of them thereafter was due to a misunderstanding over Plaintiff's prescription. There is no evidence of deliberate indifference in the record during this time.

On the other hand, what occurred during the eleven days between December 17, 2014 and December 28, 2014, is unclear. While Plaintiff states that he was told by Defendant Kinzey on December 17, 2014, that in order to receive his knee braces he would need to withdraw his grievance, Defendant Kinzey disputes ever having this exchange with Plaintiff. Defendant Harr also disputes ever saying "I could drag my feet on gettin' them to you if you keep playing games and don't sign off on [the grievance]. It works both ways." However, the Defendants do not specify when they actually learned from the medical department that Plaintiff's knee braces could be returned to him, or how long it took for the braces to be cleared by security. They simply state that the braces were returned to him on December 28th.

What is fatal to Plaintiff's claim is that he fails to explain or provide any evidence as to what occurred between December 17th and December 28th. Plaintiff relies on the disputed statements allegedly made by Kinzey and Harr as evidence that they intentionally withheld his knee braces for his failure to sign-off on his grievance, but he has produced no other evidence that the Defendants intentionally withheld his knee braces during this period of time. Furthermore, any such intention is somewhat disproved by the response to Plaintiff's Grievance No. 543368, wherein it explains that "Staff initiated the common practice of 'signing-off' on the grievance with the return of said knee sleeves verses resolving the grievance with their return. This is a paperwork process allowed by policy." ([ECF No. 3-1, at p.12](ECF No. 3-1, at p.12).) In other words, it is possible that Kinzey and Harr were simply following practice, which would have resulted in the immediate return of his knee sleeves, but they could not do so at that time because Plaintiff refused to withdraw his grievance. As such, Plaintiff had to wait for the return of his knee braces until his grievance was processed and resolved on paper. While there is still no explanation for

9

why this took eleven days, the short period of time he did not have his braces fails to establish a constitutional violation.

Plaintiff's sole reliance on the statements allegedly made by Kinzey and Harr are simply not enough to survive summary judgment on this claim. Even assuming Kinzey and Harr actually told Plaintiff that he would have to withdraw his grievance before his knee braces could be returned, there is still no evidence of deliberate indifference. During the period of time he was without his braces, Plaintiff was still capable of having his blood pressure monitored, even though it was painful for him to stoop,[2] and he was on medication for his hypertension. Moreover, even assuming Plaintiff's blood pressure was supposed to be monitored twice a day, which there is no evidence of in the record, the medical department informed Kinzey that Plaintiff was in no immediate danger of a serious health risk. While Plaintiff may not have been able to have his blood pressure consistently monitored during the time he was without his knee braces, he was still being treated for his medical condition. Additionally, there is no evidence that Plaintiff actually suffered any kind of medical emergency, such as a heart attack or stroke, during the time he was without his knee braces. Therefore, even if the Defendants disregarded the potential risk for a serious medical need to occur, there was no serious medical need that actually occurred to which they were deliberately indifferent. For these reasons, summary judgment must be granted in favor of Defendants.

### B. Claim against Defendants Sroka, Wingard, and Mazurkiewicz

As to Mazurkiewicz, Plaintiff claims that as the deputy superintendent in charge of the medical department he had the right, duty and obligation to investigate Plaintiff's situation after

---

[2] In Grievance No. 538871, Plaintiff admitted that he could bend his knees to lower his arm to the aperture for the blood pressure cuff, but he stopped after five days because it was too painful. (ECF No. 3-1 at p.6.)

learning that he was being denied his knee braces through his Grievance No. 539347, wherein he grieved the medical department's improper handling of his prescribed knee braces. The Court notes, however, that Mazurkiewicz's response to this particular Grievance was on January 5, 2015, after Plaintiff's knee braces had already been returned to him.

As to Sroka and Wingard and also as to Mazurkiewicz, Plaintiff alleges that they conspired to fraudulently reopen a closed/resolved grievance. Specifically, Plaintiff claims that he received a remand of his Grievance No. 538871, but Plaintiff states that he never appealed that Grievance because it was ruled in his favor. Plaintiff claims these Defendants processed a fraudulent appeal and lied on an official document. However, Plaintiff is incorrect in his assertions. While Plaintiff did not actually file an official appeal of Grievance No. 538871, he filed a grievance on December 31, 2014, that was treated as an appeal of Grievance No. 538871 and the remand appears to be in response to this particular grievance. (ECF No. 25-1.)

Nevertheless, contentions that defendants violated an inmate's constitutional rights by failing to follow proper procedure or take corrective action following his submission of an institutional grievance are generally without merit. Prisoners have no constitutionally protected right to a grievance procedure, and it has long been recognized that a state prisoner's allegation that prison officials and administrators responded inappropriately, or failed to respond, to a prisoner's complaint or grievance, is insufficient to establish personal involvement in the underlying unconstitutional conduct. *See* Rode v. Dellarciprete, 845 F.2d 1195, 1207-08 (3d Cir. 1988) (the filing of a grievance is not sufficient to show the actual knowledge necessary for personal involvement); *see also* Simonton v. Tennis, 437 F. App'x 60, 62 (3d Cir. 2011); Brooks v. Beard, 167 F. App'x 923, 925 (3d Cir. 2006). Because there are no factual allegations of personal involvement by Sroka, Wingard or Mazurkiewicz other than their involvement in the

prison's grievance process, summary judgment will be granted as to the claims Plaintiff has raised against them, including fraud, conspiracy and a due process violation.

As appropriate Order will issue separately.

Dated: September 21, 2016.

/s/ Lisa Pupo Lenihan
Lisa Pupo Lenihan
United States Magistrate Judge

Cc: William Harris
CX-7039
SCI Fayette
Box 9999
LaBelle, PA  15450-0999

Counsel for Defendants
*Via CM/ECF electronic mail*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| WILLIAM HARRIS, ) | |
| ) | Civil Action No. 15 – 39J |
| Plaintiff, ) | |
| ) | |
| v. ) | Magistrate Judge Lisa Pupo Lenihan |
| ) | |
| BRIAN HYDE, *Health Care* ) | |
| *Administrator*, TREVOR WINGARD, ) | ECF No. 72 |
| *Superintendent*, HEIDI SROKA, ) | |
| *Superintendent's Assistant*, JOSEPH ) | |
| MAZURKIEWICZ, *Deputy* ) | |
| *Superintendent*, HARR, *Lieutenant*, ) | |
| ROBERT D. KINZEY, JR., ) | |
| *Lieutenant*, ) | |
| ) | |
| Defendants. | |

## **ORDER**

**AND NOW**, this 21st day of September, 2016, **IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment (ECF No. 72) is **GRANTED** as to all claims raised. However, Plaintiff's retaliation claim remains pending and the Court will reserve ruling on that claim until additional briefing is provided. Defendants have thirty (30) days from the date of this Order to file a Second Motion for Summary Judgment addressing Plaintiff's retaliation claim. Plaintiff shall have thirty (30) days in which to respond.

/s/ Lisa Pupo Lenihan
Lisa Pupo Lenihan
United States Magistrate Judge

Cc: William Harris
     CX-7039
     SCI Fayette
     Box 9999
     LaBelle, PA 15450-0999

Counsel for Defendants
*Via CM/ECF electronic mail*